IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

2014 JUL 17  A 11: 50

Daphne Radley,                          )
                                        )
            Plaintiff,                  )
                                        )          Civil Action No. 6:13-569-RMG
    vs.                                 )
                                        )
Carolyn W. Colvin, Acting Commissioner  )
of Social Security,                     )          **ORDER**
                                        )
            Defendant.                  )
_____)

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC,

this matter was referred to a United States Magistrate Judge for pre-trial handling. The

Magistrate Judge issued a Report and Recommendation on June 19, 2014, recommending that

the Court affirm the decision of the Commissioner. (Dkt. No. 18). The Plaintiff filed objections

to the Report and Recommendation and the Commissioner filed a reply. (Dkt. No. 20, 21). As

more fully set forth below, the Court reverses the decision of the Commissioner and remands the

matter for further action consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is

-1-

made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a

determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Where the claimant has multiple impairments but none satisfy independently the criteria for a listed impairment, the Commissioner is obligated to consider the combined effect of the various impairments and determine whether they are the medical equivalent of the criteria of a listed impairment. 42 U.S.C. § 423(d)(2)(B); *Walker v. Bowen*, 889 F.2d 47, 49-50 (1989); 20 C.F.R. § 416.1526(b)(ii).

If the claimant does not have a listed impairment or the medical equivalent of a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996). To the extent the claimant has more than one mental or physical impairment, the Commissioner must consider the combined effect of the claimant's multiple impairments, rather than fragmentize them, and explain her "evaluation of the combined effects of the impairments." *Walker v. Bowen*, 889 F.2d at 50.

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is

-3-

deemed not to be disabled.  If the claimant cannot perform his past relevant work, the

Commissioner then proceeds to Step Five to determine if there is other available "work which

exists in significant numbers either in the region where [the claimant] lives or in several regions

of the country" he can perform in light of the RFC determination.  42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 404.1520(a)(4)(v).  At Step Five, the burden shifts to the Commissioner to "show that

the claimant retains the capacity to perform an alternative work activity and that this specific type

of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Under the regulations of the Social Security Administration, the Commissioner is

obligated to consider all medical evidence and the opinions of medical sources, including treating

physicians. 20 C.F.R. § 404.1545.  The regulation, known as the "Treating Physician Rule,"

imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.*

§ 404.1527(c).  The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . .

treating sources" based on the view that "these sources are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)

and may bring a unique perspective to the medical evidence that cannot be obtained from

objective medical findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).  Further, the Commissioner

"[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant]

than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded

controlling weight.  Even where the opinions of the treating physicians of the claimant are not

accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a

broad range of specifically identified factors, including the examining relationship, the nature and

extent of the treatment relationship, supportability of the opinions in the medical record,

consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The

Commissioner is obligated to weigh the findings and opinions of treating physicians and to give

"good reasons" in the written decision for the weight given to a treating source's opinions. SSR

96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Under the Treating Physician Rule, preference

is generally given to the opinions of treating physicians over the opinions of non-examining chart

reviewers or one time examiners. 20 C.F.R. § 404.1527(c)(1)-(2).

## Discussion

Plaintiff's efforts to qualify for DIB have traveled a rather lengthy and protracted path.

Plaintiff applied for benefits on April 24, 2008, and her application was initially denied in a

decision by the Administrative Law Judge ("ALJ") on December 22, 2009. This decision was

vacated by the Appeals Council and remanded to the same ALJ to address several issues,

including the evaluation of Plaintiff's mental impairments, the determination of Plaintiff's RFC,

and consideration of further evidence from a vocational expert. Transcript of Record ("Tr.") 18-

19. By the time this matter was before the ALJ for the second administrative hearing, the record,

totaling over 850 pages, included various opinions offered by fifteen different medical and

psychological experts. These expert opinions were offered by two treating physicians, four

examining physicians, and nine non-examining and non-treating providers who conducted only

chart reviews.

The ALJ issued her second opinion in this matter on October 6, 2011, finding that

Plaintiff had six different severe impairments: (1) refractory right hip bursitis and tendonitis;

(2) sciatic nerve injury on the right; (3) degenerative disc disease of the lumbar spine; (4)

depression; (5) anxiety; and (6) possible bipolar disorder. Tr. 21. The ALJ determined that

Plaintiff's impairments did not meet any of the Listings at Step Three of the sequential process

and that she retained at Step Four the RFC to perform "the full range of light work." Tr. 23.

Under Social Security regulations, a claimant with Plaintiff's characteristics who is 55 years or

older will generally be considered disabled if she is limited to sedentary or light work, and a

similar claimant 50 to 54 years of age will generally be deemed disabled if she is limited to

sedentary work. 20 C.F.R. § 404.1568(d)(4). Since Plaintiff became 55 years of age during the

pendency of this protracted administrative proceeding, on March 17, 2011, the ALJ found that

Plaintiff was disabled as of that date going forward but was not disabled from the Plaintiff's

alleged onset date of April 5, 2006, through March 16, 2011. Tr. 42-43. Plaintiff unsuccessfully

sought review with the Appeals Council and thereafter timely filed an appeal to challenge the

denial of disability benefits with this Court covering the period of April 5, 2006, through March

16, 2011.

The ALJ found little she agreed with among the various medical and psychological

experts who offered opinions in this matter. She gave "little weight" to Plaintiff's two treating

physicians, Dr. Eric Loudermilk, a board certified pain specialist, and Dr. Raul Paez, a board

certified psychiatrist. Tr. 40-42. Both of these specialist treating physicians opined that

Plaintiff's multi-fold impairments prevented her from engaging in full-time employment. Tr.

590-91, 730-44, 775, 806, 831-32. The ALJ also gave "little weight" to the opinions of two

examining experts who offered opinions consistent with the treating physicians, Dr. George

Bruce, a board certified orthopaedist, and Dr. C. David Tollison, a licensed psychologist. Tr. 39,

-6-

528-31, 585-88. She accorded only "some weight" to another examining psychologist who diagnosed Plaintiff with a "moderate to severe" major depressive disorder. Tr. 39, 546-48. The ALJ gave "some weight" to another examining psychologist, Dr. Spurgeon Cole, who opined Plaintiff's mental condition was less serious than the assessments of Plaintiff's treating psychiatrist and two other examining psychologists. Tr. 39, 543-45. The ALJ reserved her greatest weight to the opinions of Dr. Larry Clanton, a non-examining and non-treating psychologist who conducted his chart review in September 2008 and, thus, did not have access to the additional treatment records and opinions of the treating physicians that were subsequently added to the record. Tr. 39, 613-30.

In attempting to get one's arms around this voluminous record, it is important to note at the outset the narrowness of the dispute at issue. The ALJ recognizes that Plaintiff has a myriad of severe physical and mental impairments that interfere with her ability to function in the workplace, and the issue is whether these numerous severe impairments permit or do not permit Plaintiff to perform light work. For a person to be able to perform the full range of light work, she must be able to do "a good deal of walking or standing" and "most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Where a person has mental impairments, the claimant will be evaluated on her ability to perform activities of daily living, social functioning, and maintenance of concentration, persistence, and pace. 20 C.F.R. § 404.1520a(c)(3). When a claimant has multiple impairments, as is present here, it is critical that the ALJ "consider the combined effect of a claimant's impairments and not fragmentize them" because the "total effect" of the multiple impairments, taken together, could "render claimant unable to engage in substantial gainful activity." *Walker v. Bowen*, 889 F.2d at 50.

-7-

In making her finding that Plaintiff did not meet any List at Step Three, the ALJ stated that she had no impairment or "combination of impairments" that satisfied any Listing. Tr. 22. The ALJ does not, however, describe or explain the combined effects of Plaintiff's six different severe impairments, three physical and three psychological. As Judge Sol Blatt observed in *Saxon v. Astrue*, 479 F. Supp. 2d 471, 480 (D.S.C. 2009), "[w]hat is missing from the ALJ's findings . . . is an *explanation* of his evaluation of the combined effect of the Plaintiff's impairments." When the ALJ moved to assess Plaintiff's RFC at Step Four, she dispatched with any pretense of considering the combined and cumulative effects of Plaintiff's myriad impairments by distinctly separating out the claimant's physical and psychological impairments. Tr. 25-37. This represented a classic case of fragmentizing of the Plaintiff's impairments clearly prohibited in *Walker*. As the Fourth Circuit observed in *Walker*, "[i]t is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling." 889 F.2d at 50. The Court hereby reverses the decision of the Commissioner and remands the matter to the agency to consider and then explain the combined effect of Plaintiff's numerous and significant physical and mental impairments.

The Court also expresses a grave concern with the ALJ's application of the Treating Physician Rule in this matter. When the blizzard of criticisms offered by the ALJ regarding the fifteen expert opinions is sorted out, it is quite evident that minimal weight was given to the opinions of Plaintiff's two treating specialist physicians and at most very qualified weight was given to any of the four examining physicians. The examining physicians included a board certified orthopaedist (Dr. Bruce) and two psychologists (Drs. Tollison and Moss) whose opinions largely corroborated the opinions of the treating physicians. Tr. 528-31, 546-49, 585-

-8-

88. The greatest weight was accorded to the opinions of a non-examining and non-treating psychologist, Dr. Clanton, who prepared his report in September 2008. Tr. 39, 613-30. Thus, the greatest weight was accorded to an expert who had never laid eyes on Plaintiff, did not have access to years of subsequently prepared medical records and reports when his opinions were issued, and had no professional expertise as a psychologist in assessing the multiple and complex physical impairments that were very much part of Plaintiff's disability claim.[1]  On remand, the Commissioner should give proper attention to all of the provisions of the Treating Physician Rule, including according appropriate weight to the experts' treatment history, examination history, and specialization in the area in which the opinion is offered.  20 C.F.R. § 404.1527(c).

### Conclusion

Based on the foregoing, the Court hereby **REVERSES** the decision of the Commissioner, pursuant to 42 U.S.C. § 405(g), and **REMANDS** the matter to the Commissioner for further action consistent with this order.

---

[1] It is instructive that five of the six experts that actually examined Plaintiff (Drs. Loudermilk, Paez, Tollison, Moss, and Bruce) offered opinions generally supportive of Plaintiff's disability claim. *Radford v. Colvin*, 734 F.3d 288, 295-96 (4th Cir. 2013) ("[R]ejecting the opinions of [the claimant's] treating physicians in favor of the state medical examiners . . . raises red flags because the state medical opinions are issued by non-examining physicians and are typically afforded less weight than those by examining and treating physicians.")

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

July 17, 2014
Charleston, South Carolina